IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CT-3251-FL

| | |
|---|---|
| ANTONIO M. ORTIZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| GEORGE T. SOLOMON, PAULA SMITH, | ) |
| MONICA BOND, CARLTON JOYNER, | ) |
| RAYNOR DONNIER R., DR. METIKO, | ) |
| WILLIAM ELDERDICE, RODNIQUE | ) |
| RIVERS, MATTHEW BAUM, DR. | ) |
| McKENZIE, JESSICA REID,[1] and NURSE | ) |
| GODDARD, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on motion to dismiss by defendants Jessica Reid ("Reid") and Dr. McKenzie ("McKenzie") (DE 46); motion for summary judgment and motion to dismiss by defendant Dr. Metiko ("Metiko") (DE 50);[2] and plaintiff's motion to appoint counsel (DE 68). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court denies plaintiff's motion, grants in part and denies in part defendants Reid and McKenzie's motion, and denies defendant Metiko's motion.

**STATEMENT OF THE CASE**

Plaintiff claims deliberate indifference to his serious medical needs and denial of proper medical care in violation of the Eighth Amendment while incarcerated at Central Prison. (Am.

---

[1] Defendant Jessica Reid was improperly identified in the amended complaint as Jessica Castro. (Am. Compl. ¶ 17); (Def.s' Mem. (DE 47) 1). The court's caption has been amended to reflect the change.

[2] The motion for summary judgment is limited to the failure to exhaust administrative remedies issue.

Compl. ¶ 1). Plaintiff filed his first complaint on September 28, 2015. On March 29, 2016, the court ordered plaintiff to particularize his complaint. On May 13, 2016, plaintiff filed a particularized complaint, which he amended on September 2, 2016.

On October 15, 2015, plaintiff filed a motion to appoint counsel. On March 29, 2016, the court denied plaintiff's motion. On March 6, 2017, plaintiff filed a motion for reconsideration of the court's order, which the court denied on March 10, 2017. On May 25, 2017, plaintiff filed the instant second motion to appoint counsel.

On April 7, 2017, defendant Metiko filed the instant motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies before he brought his lawsuit. (Def.'s Mem. (DE 53) 12–13). Defendant Metiko also moves to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim; on the basis of Eleventh Amendment immunity and qualified immunity; and on the basis that plaintiff did not comply with North Carolina Rule of Civil Procedure Rule 9(j). On March 31, 2017, defendants Reid and McKenzie filed a motion to dismiss under Rule 12(b)(6) and Federal Rule of Civil Procedure Rule 8 for failure to state a claim. Defendants Reid and McKenzie similarly argue plaintiff failed to satisfy Rule 9(j).

## STATEMENT OF THE FACTS

Except as where otherwise identified below, the facts viewed in the light most favorable to plaintiff may be summarized as follows: plaintiff alleges that he has struggled, and continues to struggle, with treatment of his high blood pressure while incarcerated in North Carolina under North Carolina Department of Public Safety's custody. (See Am. Compl. ¶ 3). In January of 2010, plaintiff alleges that his unstable history of high blood pressure contributed to his diagnosis of renal failure. (See id. ¶ 4). After his diagnosis, at Scotland Prison, plaintiff alleges he was treated by

various doctors, some of whom were reluctant to prescribe him medication or treatment for his high blood pressure and kidney condition. (See id. ¶ 6).

In June 2014, plaintiff alleges he was transferred to Central Prison for permanent dialysis treatment. (See id. ¶ 7). Plaintiff alleges his "medical condition stayed the same" despite the dialysis treatment, and his kidney doctor at Central Prison, defendant McKenzie, had a difficult time diagnosing his symptoms. (Id. ¶ 8). Plaintiff alleges defendant McKenzie then scheduled an appointment with a heart specialist for plaintiff. (See id.). In June 2015, plaintiff allegedly had heart surgery, and his symptoms, related to his high blood pressure, continued and he started experiencing stomach pain and pain in his dialysis arm. (See id. ¶ 9). In response, defendant McKenzie allegedly would not prescribe him anything another than ibuprofen for the pain and told him that if he wanted other pain medication, it would need to be approved by the Medical Director or Medical Utilization Review Board. (See id. ¶ 9). Further, plaintiff alleges that "dialysis patients can not be given ibuprofen for some reason." (Id. ¶ 19).

On September 2015, plaintiff then alleges he was placed in administrative segregation and had a difficult time accessing his blood pressure medication. (See id. ¶ 10). He alleges that he did not receive it for five days straight from October 6, 2015 to October 10, 2015. (Id.). As a result of this, and his inability to receive a renal diet, on October 15, 2015, plaintiff alleges he passed out and was transported to urgent care. (See id. ¶ 11). While at urgent care, plaintiff alleges he was physically assaulted by four prison officials, including defendant Rivers. (See id.). He alleges that, "[b]oth my lips were busted [and] I receive no medical assistance." (Id.). Then, plaintiff was admitted to the hospital, and alleges he was not provided "clean clothing, clean bedsheets, no writing papers to write down the incident," and that, "the shower was too cold for Dialysis patients and I had

3

no recreation time, my clothes were stained with blood." (Id. ¶ 12). When plaintiff complained at the conditions, defendant Metiko allegedly stated to him, "[y]ou going to die right in that room." (Id. ¶ 13). Plaintiff filed an official grievance on November 27, 2015, related to the incident, naming defendant Metiko, and further complaining that the light in his room was always on, which disrupted his sleep schedule, the food he was being served was not "regular," his shower water was too cold, his feet were numb, and he was not receiving an hour of recreation time. (See Couch Aff. (DE 52) Ex. F, at 26).

As a result of his medical treatment, plaintiff allegedly has lost the use of both of his kidneys and receives permanent dialysis treatments, which requires him to be "stuck to a machine for three and a half hours sitting on a not too comfortable chair with two long needles stuck in my arm." (Am. Compl. ¶ 21). Further, on May 13, 2016, plaintiff also alleges that defendant Reid, a nurse at Central Prison, injured him when she improperly inserted a needle in his arm for a dialysis treatment. (See id. ¶ 17). As a result, plaintiff alleges his dialysis treatment was cut short on that day. (Id.).

## DISCUSSION

A.  Motion for Counsel

There is no constitutional right to counsel in civil cases and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances depend upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982)).

Plaintiff does not present exceptional circumstances which merit the appointment of counsel.

4

Plaintiff claims a need for counsel because he does not speak English and has limited access to legal research resources. However, plaintiff has demonstrated through the detail of his filings that he is capable of proceeding pro se. Additionally, as stated previously, this case is not complex. Thus, plaintiff's motion is DENIED.

B.   Defendant Metiko's Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

   2.   Analysis

The Prison Litigation Reform Act of 1995 ("PLRA") states "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006); see Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular

5

episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA requires a prisoner to exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001).

Administrative grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought." Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008). In Moore, the Fourth Circuit held that a prisoner's individual medical conditions, even if they form a larger record of inadequate treatment, need to be plead in separate administrative grievances to "give prison officials a fair opportunity to address the alleged inadequate care." See id. at 729. Grievances must be exhausted before a prisoner brings suit. See Jones v. Bock, 549 U.S. 199, 202 (2007). However, the exhaustion timeline is adjusted when a prisoner brings an amended claim under Federal Rule of Civil Procedure Rule 15(d). If there is one properly exhausted claim when the original complaint is filed, additional claims in the amended complaint are considered exhausted as long as exhaustion took place before the amended complaint is filed. See Mattox v. Edleman, 851 F.3d 583, 591-92 (6th Cir. 2017); Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010); Boone v. Nose, 530 F. App'x 112, 113 n.1 (3d Cir. 2013); Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam); see, e.g., Mathis v. GEO Grp., Inc., No. 2:08-CT-21-D, 2011 WL 2899135, at *5 (E.D.N.C. July 18, 2011).

Defendant Metiko's argument that plaintiff failed to exhaust his administrative remedies fails under Rule 56. Defendant Metiko argues that plaintiff did not exhaust his administrative grievances pertaining to his claim against defendant Metiko because the incident underlying plaintiff's claim occurred after plaintiff brought this action, therefore making exhaustion impossible. (See Def.'s

6

Mem. (DE 53) 13). Two of plaintiff's grievances are at issue, grievance numbers No. 3100-15-0814 and No. 3100-15-ABKU101129. (See Couch Aff. (DE 52) Ex. D, F, at 18-20, 26-30).

Grievance No. 3100-15-0814 was exhausted before plaintiff filed his original complaint on September 15, 2015, and relates to his high blood pressure and kidney dialysis treatments. (Id. Ex. D, at 18). Grievance No. 3100-15-ABKU101129 was exhausted before plaintiff filed his amended complaint on September 2, 2016, but after his original complaint, and relates to his hospital stay under defendant Metiko's care for an alleged assault. (Id. Ex. F, at 26). In accordance with Moore, plaintiff exhausted separate administrative grievances for both injuries suffered.

Furthermore, as plaintiff's claim against defendant Metiko originated after plaintiff filed his first complaint, the court construes it as an added claim pursuant to Federal Rule of Civil Procedure 15(d). Thus, plaintiff properly exhausted a claim in his original complaint with grievance No. 3100-15-0814 and exhausted the additional claim in his amended complaint against defendant Metiko with grievance No. 3100-15-ABKU101129. Where plaintiff properly exhausts a claim by the time the original complaint is filed, additional claims asserted in the amended complaint are exhausted if exhaustion for those additional claims took place before the amended complaint was filed. See Mattox, 851 F.3d at 591-92; Rhodes, 621 F.3d at 1005; Boone, 530 F. App'x at 113 n.1; Cannon, 418 F.3d at 719; Mathis, 2011 WL 2899135, at *5. Therefore, the court DENIES defendant's motion for summary judgment.

C.  Defendants' Motions to Dismiss

   1.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

7

defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994). Nevertheless, Erickson does not undermine the requirement that a pleading contain "more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555). Furthermore, while a pro se complaint must be construed liberally, it

is not the court's obligation "to discern the unexpressed intent of the plaintiff." Laber v. Harvey, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

To the extent defendant moves to dismiss plaintiff's complaint pursuant to Rule 8, the legal sufficiency of a complaint depends, in part, on whether it meets the pleading standards stated in Federal Rule of Civil Procedure 8. See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] Fed. R. Civ. P. 8(a)(2).

2.  Analysis

Moving defendants assert qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first examines plaintiff's claims in turn to determine whether plaintiff establishes a constitutional violation.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious

---

[2] Plaintiff makes specific allegations against each named defendant and sufficiently connects each defendant to the allegations of the complaint. (See Am. Compl. ¶¶ 13, 17, 19). Thus, plaintiff complied with Rule 8.

9

deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious." Id. (internal quotations omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (internal quotations omitted)).

The second prong is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. Deliberate indifference is "a particularly high bar to recovery." Iko, 535 F.3d at 241. For medical care, "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or malpractice in diagnosis or treatment are not exceptional circumstances. See id. at 849; Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

    a.    Defendant Metiko

Plaintiff alleges defendant Metiko ignored his pain by failing to treat his lip injury during

his hospital stay at Central Prison. (See Am. Compl. ¶ 12). Plaintiff also alleges defendant Metiko failed to provide him with clean clothing, clean bed sheets, warm showers, writing paper, and a proper renal diet during his hospital stay. (Id.). Additionally, plaintiff alleges his room light was always on, and that his feet went numb because he was not receiving his recreation time. (See Couch Aff. (DE 52) Ex. F, at 26). When plaintiff complained to defendant Metiko, he alleges defendant Metiko stated to him, "[y]ou going to die right in that room." (Am. Compl. ¶ 13). Further, plaintiff alleges he was admitted to urgent care on October 15, 2015, and was still being treated at Central Prison on November 27, 2015, over a month later, when he filed his related grievance. (See id. ¶ 11); (see also Couch Aff. (DE 52) Ex. F, at 26).

Taken as a whole, these allegations, defendant Metiko's alleged statement, and the time period in which plaintiff stayed at Central Prison under defendant Metiko's care, permit the inference viewed in the light most favorable to plaintiff that defendant Metiko was deliberately indifferent to plaintiff's medical needs. Cf. Douglas v. McCarty, 87 Fed. App'x 299, 301 (4th Cir. 2003). Thus, plaintiff has stated a viable claim against defendant Metiko, and his motion to dismiss is DENIED. Further, defendant Metiko's argument that he is entitled to qualified immunity does not draw inferences in favor of plaintiff. (See Def.'s Mem. (DE 53) 22). Because such inferences permit a finding that plaintiff established a constitutional violation based on the Eighth Amendment as stated above, defendant Metiko is not entitled to qualified immunity for this claim.[3]

---

[3] Defendant Metiko also raises the claim of Eleventh Amendment immunity. Defendant Metiko is an agent of the North Carolina Department of Public Safety. (Def.'s Mem. (DE 53) 23). As such, defendant Metiko is entitled to immunity in his official capacity under the Eleventh Amendment, and official capacity claims against defendant Metiko are dismissed. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordan, 415 U.S. 651, 663 (1974).

b.  Defendant McKenzie

Plaintiff alleges that Dr. McKenzie deliberately ignored his pain during the course of his medical treatment for his high blood pressure and dialysis by refusing to prescribe him pain medication and prescribing him ibuprofen, which he alleges dialysis patients cannot take. (Id. ¶¶ 8–9, 19). Defendants state that Dr. McKenzie's treatment of plaintiff is reflected in the medical records, "which speak for themselves, and provide the best evidence of their content." (See Def.s' Resp. (DE 45) ¶ 8). The medical records have not been provided, and therefore, the court cannot determine the scope of the treatment or the alleged injury. Therefore, plaintiff's allegations that defendant McKenzie refused to prescribe him any viable pain medication, in addition to the period of time in which defendant McKenzie has treated plaintiff, permit the inference that defendant McKenzie acted deliberately indifferent towards plaintiff. Cf. Estelle, 429 U.S. at 107–08. Thus, plaintiff has stated a viable claim against defendant McKenzie. Therefore, the motion as it pertains to defendant McKenzie is DENIED.

c.  Defendant Reid

With respect to defendant Reid, plaintiff alleges that on May 13, 2016, defendant Reid, a nurse at Central Prison, injured him when she improperly inserted a needle in his arm for a dialysis treatment. (Am. Compl. ¶ 17). As a result, plaintiff alleges his dialysis treatment was cut short on that day. (Id.). The improper placement of a needle by a nurse while administering a medical treatment is a negligence claim. See Fairshter v. Am. Nat'l Red Cross, 322 F. Supp. 2d 646, 651–53 (4th Cir. 2004). Negligence claims are inactionable under the Eighth Amendment and do not

amount to exceptional circumstances.[4] See Estelle, 429 U.S. at 105-06. Thus, the motion as it pertains to defendant Reid is GRANTED.

## CONCLUSION

Based on the forgoing, the court ORDERS:

1) Plaintiff's motion to appoint counsel (DE 68) is DENIED;

2) Defendant Metiko's combined motion for summary judgment and motion to dismiss (DE 50) is GRANTED IN PART and DENIED IN PART as set forth herein. Defendant Metiko is entitled, in his official capacity, to immunity under the Eleventh Amendment, and claims against him in his official capacity are DISMISSED. However, defendant Metiko is not entitled to qualified immunity in his personal capacity, and such claims are allowed to proceed. The court leaves further determination of qualified immunity for another day on a more complete record;

3) Defendants Reid and McKenzie's motion to dismiss (DE 46) is DENIED IN PART as to defendant McKenzie and GRANTED IN PART as to defendant Reid. Plaintiff's claim against defendant McKenzie may proceed;

4) Defendant Jessica Castro is now properly identified as defendant Jessica Reid. The court's caption has been amended to reflect the change.

SO ORDERED, this 22nd day of January, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[4] Further, negligence claims brought in this posture must satisfy the elements of North Carolina Rule of Civil Procedure 9(j). Plaintiff has not alleged that he has complied with this procedure, and therefore the court will not construe the claim as such.